JOHNSON & PHAM, LLP
Christopher Q. Pham, SBN: 206697
    E-mail: cpham@johnsonpham.com
Marcus F. Chaney, SBN: 245227
    E-mail: mchaney@johnsonpham.com
Nicole Drey Huerter, SBN: 250235
    E-mail: ndrey@johnsonpham.com
Hung Q. Pham, SBN: 276613
    E-mail: ppham@johnsonpham.com
6355 Topanga Canyon Boulevard, Suite 326
Woodland Hills, California 91367
Telephone:   (818) 888-7540
Facsimile:   (818) 888-7544

Attorneys for Plaintiff
ADOBE SYSTEMS INCORPORATED

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADOBE SYSTEMS INCORPORATED, a Delaware Corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>CHRIS GORSLINE, an Individual; LINDSAY DUVANSKI, an Individual; WXONLINE, an unknown business entity; and DOES 1-10, Inclusive,<br><br>    Defendants. | Case No.:  5:17-cv-03675<br><br>**COMPLAINT FOR DAMAGES:**<br><br>**(1) FEDERAL TRADEMARK INFRINGEMENT [15 U.S.C. § 1114 / *Lanham Act* §32(a)];**<br>**(2) FALSE DESIGNATION OF ORIGIN / FALSE OR MISLEADING ADVERTISING / UNFAIR COMPETITION [15 U.S.C. §1125(a) / *Lanham Act* §43(a)];**<br>**(3) TRADEMARK DILUTION [15 U.S.C. §1125(c)];**<br>**(4) FEDERAL COPYRIGHT INFRINGEMENT [17 U.S.C. §501(a)]; AND**<br>**(5) FRAUD [Common Law]**<br><br>**[DEMAND FOR JURY TRIAL]** |

COMES NOW, Plaintiff ADOBE SYSTEMS INCORPORATED to hereby file its Complaint for Damages against Defendants CHRIS GORSLINE, LINDSAY DUVANSKI, WXONLINE, and DOES 1-10, inclusive (collectively, "Defendants").

**PARTIES**

1. Plaintiff ADOBE SYSTEMS INCORPORATED (hereinafter "Plaintiff" or "Adobe") is now, and was at the time of the filing of this Complaint and at all intervening times, a corporation duly organized and existing under the laws of the State of Delaware, having its principal place of business in San Jose, California.

2. Plaintiff is informed and believes that Defendant CHRIS GORSLINE (hereinafter "Gorsline") is an individual residing in the Northeastern United States. Plaintiff is informed and believes that Defendant Gorsline does business in the State of California and specifically in the Northern District of California.

3. Plaintiff is informed and believes that Defendant LINDSAY DUVANSKI (hereinafter "Duvanski") is an individual residing in the Northeastern United States. Plaintiff is informed and believes that Defendant Duvanski does business in the State of California and specifically in the Northern District of California.

4. Plaintiff is informed and believes that Defendant WXONLINE is now, and was at the time of the filing of this Complaint and at all intervening times, a business entity of unknown status with an unknown principal place of business.

5. Plaintiff is informed and believes that Defendants Gorsline and/or Duvanski are principals, directors, members, and/or officers of Defendant WXONLINE. Plaintiff is also informed and believes that Defendants Gorsline and/or Duvanski are moving and directing forces behind Defendant WXONLINE.

6. Plaintiff is informed and believes that, at the time of its creation, now, and at all times relevant to this Complaint, Defendant WXONLINE did not and does not have sufficient funding to assuming responsibility for its foreseeable and actual liabilities.

7. Plaintiff is informed and believes that since the time of its creation, now, and at all times relevant to this Complaint, Defendant WXONLINE was undercapitalized.

8. Plaintiff is informed and believes that since the time of its creation, now, and at all times relevant to this Complaint, Defendant WXONLINE has failed to observe corporate formalities required by law.

**COMPLAINT FOR DAMAGES**

9.      The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants herein named as DOES 1-10, inclusive, are unknown to Plaintiff. Plaintiff therefore sues said Defendants by such fictitious names.  When the true names and capacities of said Defendants have been ascertained, Plaintiff will amend this pleading accordingly.

10.     Plaintiff further alleges that Defendants Gorsline, Duvanski, WXONLINE, and DOES 1-10, inclusive, sued herein by fictitious names, are jointly, severally and concurrently liable and responsible upon the causes of action hereinafter set forth.

11.     Plaintiff is informed and believes and thereon alleges that at all times mentioned herein Defendants Gorsline, Duvanski, WXONLINE, and DOES 1-10, inclusive, and each of them, were the agents, servants and employees of every other Defendant and the acts of each Defendant, as alleged herein, were performed within the course and scope of that agency, service or employment.

## JURISDICTION

12.     This Court has federal subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§1331 and 1338 (a) and (b), in that the case arises out of claims for trademark infringement, false designation of origin / false or misleading advertising / unfair competition, and dilution under the *Lanham Act* (15 U.S.C. §1051 *et seq.*), and copyright infringement under 17 U.S.C. §501(a).  This Court has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. §§1367(a) and 1338 (a) and (b).

13.     Personal jurisdiction exists over Defendants because on information and belief, Defendants conduct business in California and within this judicial district, have purposefully directed their actions to California and this judicial district, and/or have otherwise availed themselves of the privileges and protections of the laws of the State of California, such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

14.     This Court has personal jurisdiction over Defendants because Defendants have sufficient minimum contacts with this district such that the exercise of jurisdiction over

**COMPLAINT FOR DAMAGES**

Defendants by this Court does not offend traditional notions of fair play and substantial justice. Specifically, Defendants have committed acts of willful infringement and unfair competition in this district. In connection therewith, Defendants have advertised, offered to sell, sold and distributed unauthorized and/or counterfeit software products that infringe the trademarks and copyrights of Plaintiff, a Northern California-based software company, using at least one known and several suspected seller IDs on website www.ebay.com of the Northern California-based company eBay Inc., and the Northern California-based payment processing services of PayPal, Inc., all while knowing or having reason to know that consumers throughout the United States, including within this judicial district, would purchase unauthorized and/or counterfeit software products from Defendants, believing them to be authorized goods manufactured and distributed by the Northern California-based Plaintiff or its authorized distributors. Both Plaintiff and these California consumers have been substantially harmed in California and this judicial district.

15. Venue is proper, *inter alia*, pursuant to 28 U.S.C. §1391(b), because on information and belief, a substantial part of the events or omissions giving rise to these claims occurred in this judicial district and has caused damages to Plaintiff in this district. Venue is also proper, *inter alia*, pursuant to 28 U.S.C. §1400, because on information and belief, Defendants may be found in this judicial district through their minimum contacts with the Northern District of California. Supplemental or pendent jurisdiction exists over any remaining claims due to the fact that all claims alleged herein are so closely related that they arise from the same nexus of facts and form part of the same case or controversy.

16. Moreover, Defendants have, using false identities to enter into numerous contracts with Plaintiff regarding the resale of Adobe products as part of the Adobe Partner Connection Reseller Program. The Adobe Partner Connection Program Reseller Agreement ("APCPRA") to which Defendants assented provides for jurisdiction in this Court.

**INTRADISTRICT ASSIGNMENT**

17. Pursuant to Rule 3-2(c) of the Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California ("Civil L.R.") and the

1    Court's Assignment Plan, this is an Intellectual Property Action to be assigned on a district-wide

2    basis.

3        18.    Assignment to the San Jose Division would be appropriate, pursuant to Civil L.R.

4    3-2(e), because a substantial part of the events that give rise to Plaintiff's claims against

5    Defendants occurred in Santa Clara County, California, where Plaintiff's principal place of

6    business is located.

7                                    **GENERAL ALLEGATIONS**

8                          **Plaintiff and its Famous ADOBE® Software Products**

9        19.    Plaintiff is a global leader in developing and distributing innovative computer

10   software.  Its products and services offer developers and enterprises tools for creating, managing,

11   delivering and engaging with compelling content across multiple operating systems, devices and

12   media.  The software industry is competitive, and Plaintiff undertakes great expense and risk in

13   conceiving, developing, testing, manufacturing, marketing, and delivering its software products

14   to consumers.  Software piracy undermines Plaintiff's investment and creativity, and misleads

15   and confuses consumers.

16       20.    The success of Plaintiff's ADOBE®, ACROBAT®, AFTER EFFECTS®,

17   ADOBE AUDITION®, CREATIVE SUITE®, DREAMWEAVER®, EDGE ANIMATE©,

18   ENCORE®, FIREWORKS®, FLASH®, FLASH BUILDER®, ILLUSTRATOR®,

19   INDESIGN®, PHOTOSHOP®, PRELUDE®, ADOBE PREMIERE®, and SPEEDGRADE®

20   products and services, among others (collectively referenced and referred to herein as "Adobe-

21   Branded Software"), is due in part to Plaintiff's marketing and promotional efforts.  These efforts

22   include advertising and promotion through Plaintiff's websites, print and other Internet-based

23   advertising, among other efforts.  Plaintiff has spent substantial time, money and effort in

24   building up and developing consumer recognition, awareness and goodwill in its Adobe-Branded

25   Software and the associated marks thereto.

26       21.    The success of the Adobe-Branded Software, and other products and services

27   related thereto, is not due to Plaintiff's promotional efforts alone.  Rather, the popularity of

28

Adobe-Branded Software is also due in part to consumers and the word of mouth buzz consumers have generated.

22.    As a result of Plaintiff's efforts, the quality of Plaintiff's products, and the promotion and word of mouth buzz, Adobe-Branded Software and the associated marks thereto have been prominently placed in the minds of the public.  Consumers, purchasers and members of the public have become familiar with Plaintiff's software and other products and services and have come to recognize Adobe-Branded Software and the associated marks thereto and associate them exclusively with Plaintiff.  Plaintiff has acquired a valuable reputation and goodwill among the public as a result of such association.  Indeed, Adobe-Branded Software and the associated marks thereto are famous in the United States and throughout the world and have acquired secondary meaning in the minds of consumers.

23.    While Plaintiff has gained significant common law trademark and other rights in its Adobe-Branded Software through its use, advertising and promotion, Plaintiff has also protected its valuable rights by filing for and obtaining federal trademark and copyright registrations.

24.    Plaintiff has secured registrations for its ADOBE®, ACROBAT®, AFTER EFFECTS®, ADOBE AUDITION®, CREATIVE SUITE®, DREAMWEAVER®, ENCORE®, FIREWORKS®, FLASH®, FLASH BUILDER®, ILLUSTRATOR®, INDESIGN®, PHOTOSHOP®, PRELUDE®, ADOBE PREMIERE®, and SPEEDGRADE® word and design trademarks, among others, with the United States Patent and Trademark Office ("USPTO"). A non-exhaustive list of Plaintiff's trademark registrations is attached hereto as **Exhibit A** (collectively referenced and referred to herein as "Adobe's Trademarks"). Specifically, Plaintiff owns and has registered the following marks:

(i)    "ADOBE," USPTO Reg. No. 1,475,793

(ii)    "A ADOBE," USPTO Reg. No. 1,901,149



- 6 -

**COMPLAINT FOR DAMAGES**

(iii)   "A," USPTO Reg. No. 2,081,343



(iv)   "A," USPTO, Reg. No. 1,852,943



(i)   "ACROBAT," USPTO Reg. No. 1,833,219

(ii)   "ACROBAT," USPTO Reg. No. 3,652,382

# ACROBAT

(iii)   "AFTER EFFECTS," USPTO Reg. No. 1,970,781

(iv)   "ADOBE AUDITION," USPTO Reg. No. 2,861,671

(v)   "CREATIVE SUITE," USPTO Reg. No. 3,111,341

## CREATIVE SUITE

(vi)   "DREAMWEAVER," USPTO Reg. No. 2,294,926

## DREAMWEAVER

(vii)   "ENCORE," USPTO Reg. No. 2,949,766

(viii)   "ADOBE ENCORE," USPTO Reg. No. 2,916,709

(ix)   "FIREWORKS," USPTO Reg. No. 2,043,911

## FIREWORKS

(x)   "ADOBE FLASH," USPTO Reg. No. 3,949,317

**COMPLAINT FOR DAMAGES**

(xi)    "FLASH," USPTO Reg. No. 2,855,434

(xii)   "FLASH," USPTO Reg. No.3,942,255

# FLASH

(xiii)  "FLASH," USPTO Reg. No. 2,852,245

(xiv)   "FLASH BUILDER," USPTO Reg. No. 3,857,720

# FLASH BUILDER

(xv)    "ILLUSTRATOR," USPTO Reg. No. 2,060,488

(xvi)   "ADOBE ILLUSTRATOR," USPTO Reg. No. 1,479,408

(xvii)  "INDESIGN," USPTO Reg. No. 2,439,079

(xviii) "PHOTOSHOP," USPTO Reg. No. 2,920,764

# Photoshop

(xix)   "PHOTOSHOP," USPTO Reg. No. 3,702,607

# PHOTOSHOP

(xx)    "PHOTOSHOP," USPTO Reg. No. 1,850,242

(xxi)   "ADOBE PHOTOSHOP," USPTO Reg. No. 1,651,380

(xxii)  "PRELUDE," USPTO Reg. No. 4,262,546

# PRELUDE

(xxiii) "ADOBE PREMIERE," USPTO Reg. No. 1,769,184

(xxiv) "SPEEDGRADE," USPTO Reg. No. 4,142,777

# SPEEDGRADE

25.     Similarly, Plaintiff's Adobe-Branded Software is copyrightable subject matter, and Plaintiff has secured copyright registrations for various versions of its software, specifically including but not limited to ADOBE CREATIVE SUITE 6 MASTER COLLECTION© (TX 7-568-685), ADOBE ACROBAT X PRO© (TX 7-358-035), ADOBE AFTER EFFECTS CS6© (TX 7-555-185), ADOBE AUDITION CS6 (TX 7-555-185), ADOBE DREAMWEAVER CS6© (TX 7-555-170), ADOBE EDGE ANIMATE 1.0© (TX 7-608-392), ADOBE EDGE ANIMATE 2.0© (TX 7-777-145), ADOBE EDGE ANIMATE 3.0© (TX 7-902-491), ADOBE ENCORE CS6© (TX 7-567-108), ADOBE FIREWORKS CS6© (7-555-180), ADOBE FLASH PROFESSIONAL CS6© (TX 7-555-175), ADOBE ILLUSTRATOR CS6© (TX 7-620-302), ADOBE INDESIGN CS6© (TX 7-620-297), ADOBE MEDIA ENCODER CS6© (TX 7-570-115), ADOBE PHOTOSHOP CS6 EXTENDED© (TX 7-554-299), ADOBE PRELUDE CS6© (TX 7-554-952), ADOBE PREMIERE PRO CS6© (TX 7-558-286), and ADOBE SPEEDGRADE CS6© (TX 7-554-942), among others, with the United States Copyright Office. A non-exhaustive list of Plaintiff's copyright registrations is attached hereto as **Exhibit B** (collectively referenced and referred to herein as "Plaintiff's Copyrights").

**Plaintiff's Licensing Restrictions**

26.     As part of its international licensing and distribution programs, Plaintiff imposes various restrictions on the distribution of all Adobe-Branded Software. Every piece of Adobe-Branded Software is licensed. Every distribution agreement entered into by Plaintiff clearly states that all Adobe-Branded Software is subject to a license, and anyone obtaining any Adobe-Branded Software is only granted a license, pursuant to Plaintiff's Software License Agreement ("SLA"). Plaintiff maintains title to the Adobe-Branded Software at all times and at no point does it transfer any ownership of title. Each and every piece of Adobe-Branded Software is subject to numerous restrictions on use, location of distribution, transfer, and even who is qualified to obtain the product, in certain circumstances.

**COMPLAINT FOR DAMAGES**

27.     Academic, Educational, or Student-Teacher ("EDU") versions of Adobe-Branded Software are offered at a steep discount and are intended only for students or individuals associated with educational institutions. There are restrictions on the number of copies of EDU software one user can acquire, and a customer must provide certain proof of qualification as an EDU software user. EDU software is not intended for general, commercial distribution, and only specified resellers are allowed to distribute EDU software. EDU software may not be resold, pursuant to Plaintiff's SLA. EDU software may differ from retail products in functionality, including offering personalized tutorials and instruction.

28.     Plaintiff also has different regions in which it distributes different versions of Adobe-Branded Software. All Adobe-Branded Software authorized for distribution throughout the United States is manufactured in the United States and states the same on the packaging. Adobe-Branded Software intended for distribution outside of North America is not authorized or licensed to be imported into or distributed in the United States. All software which indicates that it was made or printed in a country other than the United States is not licensed or authorized to be imported or distributed in the United States.

29.     Plaintiff distributes its Adobe-Branded Software through physical products as well as Electronic Software Downloads ("ESD"). A reseller must be specifically authorized by Plaintiff to sell ESD versions of Plaintiff's software products or else the product is unauthorized. Serial numbers designated for or attached to ESD products may not be attached to or distributed with physical products. Similarly, serial numbers designated for or attached to physical products cannot be attached to or distributed as an ESD version of Adobe-Branded Software.

**Plaintiff's "Adobe Partner Connection Reseller Program"**

30.     Plaintiff is aware that its customers rely on software resellers to provide them not only with products but also with dependable, reliable, and competent advice on the features and benefits of Adobe-Branded Software and on their specific suitability to address business challenges.

31.     Defendants, through the use of fake identities, have entered into various APCPRAs with Plaintiff as part of Plaintiff's Adobe Partner Connection Reseller Program. A

**COMPLAINT FOR DAMAGES**

1   true and correct copy of the confidential terms of the APCPRA agreements between Plaintiff and

2   Defendants' fictitious or assumed identities will be attached hereto as **Exhibit C** upon the

3   Court's granting of an order to file under seal.

4         32.    Defendants have breached the terms of the APCPRA by: (i) ordering Adobe-

5   Branded Software products from unauthorized distributors; (ii) offering for sale, selling, and

6   distributing counterfeit and/or unauthorized software; (iii) offering for sale, selling, and

7   distributing EDU software without a license; (iv) offering for sale, selling, and distributing ESD

8   software without a license; and (v) offering for sale, selling, and distributing licenses for

9   unauthorized EDU and foreign-made software products.

10   **Defendants' Wrongful and Infringing Conduct**

11         33.    Particularly in light of the success of Plaintiff and Plaintiff's products as well as

12   the reputation they have gained, Plaintiff and its well-recognized products have become targets

13   for unscrupulous individuals and entities who wish to take a free ride on the goodwill, reputation

14   and fame Plaintiff has spent considerable effort to build up in its products and marks and the

15   works embodied in Plaintiff's software products.

16         34.    A large number of individuals and entities deal in unauthorized, infringing,

17   pirated and/or counterfeit Adobe-Branded Software products and other products and services,

18   including but not limited to the famous ADOBE®, ACROBAT®, AFTER EFFECTS®, ADOBE

19   AUDITION®, CREATIVE SUITE®, DREAMWEAVER®, EDGE ANIMATE©, ENCORE®,

20   FIREWORKS®, FLASH®, FLASH BUILDER®, ILLUSTRATOR®, INDESIGN®,

21   PHOTOSHOP®, PRELUDE®, ADOBE PREMIERE®, and SPEEDGRADE® products.  Their

22   actions vary and include manufacturing, copying, exporting, importing, advertising, promoting,

23   selling, and distributing counterfeit and/or otherwise unauthorized Adobe-Branded Software

24   products.

25         35.    Counterfeit products are extremely damaging to Plaintiff and its intellectual

26   properties as well as the consumers who purchase these products. Counterfeit products often

27   contain viruses or malware, which can harm the purchaser's computer and steal their personal

28   information. Even absent such viruses or malware in the counterfeit products themselves,

counterfeit products do not allow for any updates or security patches, as Plaintiff's authentic software does, leaving the customer's computer, personal information and the software itself vulnerable to outside viruses and malware. In turn, Plaintiff's reputation and goodwill suffers because these customers blame Plaintiff, who they believe to be the original source of the software.

36.     Plaintiff investigates and enforces against such piratical and counterfeiting activity regularly and through such efforts learned of Defendants and Defendants' actions advertising, offering for sale, selling and/or distributing infringing and/or counterfeit Adobe-Branded Software products within the United States.

37.     Defendants use the services of the Northern California-based eBay, Inc.'s Internet sales platform, located at www.ebay.com (hereinafter "eBay"). Defendants offer for sale, sell and distribute their unauthorized and/or counterfeit Adobe-Branded Software through a multitude of seller IDs, including but not limited to "voodoo1337," "voodoo.3dfx," "robyne_26," "stormlabs," "firenet," "xtremespecsystems," "yanshopcs6," "ciziko," "shopxii," and "robercollier69," among many suspected others. Defendants advertise some of these seller IDs as having products located in California.

38.     For every sale made through eBay, Defendants transact payment through the Northern District of California-based, PayPal, Inc. (hereinafter "PayPal"). All money received by Defendants flows through California through the website and payment processor located at www.paypal.com.

39.     Defendants also use the services of Bonanza.com, Inc., to offer for sale, sell and distribute their unauthorized and/or counterfeit Adobe-Branded Software. Defendants have used a variety of seller IDs, including but not limited to "voodooGT" and "IntegritySystems."

40.     Plaintiff has never authorized or consented to Defendants' use of Plaintiff's Trademarks, or any confusingly similar mark, or Plaintiff's Copyrights.  Specifically, Plaintiff has never authorized Defendants to manufacture, copy, sell, distribute, or alter any of Plaintiff's Copyrights or use any of Plaintiff's Trademarks on or in connection with such copied, sold, distributed, or altered Adobe-Branded Software.

41.     Defendants advertise, offer for sale, sell and/or distribute counterfeit copies of Adobe-Branded Software. These disks, which were not manufactured or authorized for manufacture by Plaintiff, contain unauthorized versions of Plaintiff's Copyrights bearing counterfeit replicas of Adobe's Trademarks.

42.     Additionally, Defendants are not authorized distributors and/or resellers of EDU versions of Adobe-Branded Software, nor does the APCPRA or the SLA grant Defendants said right. Defendants offer for sale, sell, and/or distribute unauthorized EDU copies of Adobe-Branded Software, without a license and outside of the scope of Plaintiff's licensing restrictions, to resellers and end users in the United States and within this judicial district. Defendants do not seek proof, such as requesting a copy of an academic ID, that their customers are qualified to purchase EDU versions of Adobe-Branded Software prior to selling and/or distributing said EDU versions of Adobe-Branded Software, in violation of the APCPRA and the SLA.

43.     Defendants also purchase copies of Adobe-Branded Software intended for international distribution and import them into the United States with the intent to resell to buyers in the United States and within this judicial district, without authorization from Plaintiff. Defendants have offered for sale, sold, and/or distributed Adobe-Branded Software that was intended solely for distribution in a foreign region, without authorization from Plaintiff, to resellers and end users in the United States and within this judicial district.

44.     Defendants are not authorized distributors and/or resellers of ESD copies of Adobe-Branded Software, nor does the APCPRA or the SLA grant Defendants the right top distribute ESD. Defendants offer for sale, sell, and/or distribute ESD copies of Adobe-Branded Software, without a license, to resellers and end users in the United States and within this judicial district.

45.     On or about December 4, 2015, Plaintiff's investigator, from the State of California, purchased a purported "Adobe CS6 Master Collection FULL RETAIL Creative Suite 6 * Windows / MAC * NEW" from Defendants' eBay account "voodoo1337" for a cost of $1,399.00. The eBay listing for this item used a photograph of Plaintiff's actual product in its software box with a watermark on the photo of "⌐̄_̄ØØĐØØ." The listing also included an

1 entire product description section that had been copied, complete with graphics and images, from

2 Plaintiff's advertising and marketing materials. Payment was made through PayPal to "wxonline"

3 with an email address of "componentsguy@gmail.com." eBay has seller ID "wxonline" as

4 belonging to "Chris Gorsline."

5     46.    On or about that same date, December 4, 2015, Plaintiff's investigator received an

6 email from "Ξ ⎺_⎺ØØÐØØ Ξ" with an email address of "componentsguy@gmai.com." The

7 email requested additional information from Plaintiff's investigator regarding whether a

8 Windows or Mac license was needed and the person to be assigned the license for the Adobe

9 product. The email was signed by "Chris."

10     47.    On or about December 16, 2015, Plaintiff's investigator received a package

11 pursuant to the December 4, 2015, order via Canada Post with no return address." The package

12 contained a copy of software purporting to be "Adobe Creative Suite 6 MASTER-

13 COLLECTION." The disc was printed with poor quality artwork similar to Plaintiff's discs,

14 minus Plaintiff's copyright notices, using Plaintiff's Trademarks. The disc was contained in a

15 standard CD-ROM case with a clear front and orange back. No serial number was affixed to the

16 product. Instead, a label on the back of the case noted that "[f]or security reasons, all licenses

17 will be sent directly to the buyer's Paypal e-mail address once fully processed" (*sic*).

18     48.    On or about December 18, 2015, Plaintiff received a message through eBay from

19 eBay seller "voodoo1337" noting that the serial number would be forthcoming. The message was

20 again signed by "Chris."

21     49.    On or about December 19, 2015, Plaintiff's investigator received a serial number

22 for the purchased Adobe product via email from "Ξ ⎺_⎺ØØÐØØ Ξ" with the email address

23 "componentsguy@gmail.com." The email was signed "voodoo."

24     50.    Thereafter, Plaintiff inspected the disc and confirmed that the Adobe-Branded

25 Software provided by Defendants pursuant to the December 4, 2015, order contained a copy of

26 ADOBE CREATIVE SUITE 6 MASTER COLLECTION©. Plaintiff also confirmed that the

27 disc was a counterfeit DVD-R disc that had not been manufactured or authorized to be

28 manufactured by Plaintiff. Plaintiff also analyzed the serial number sent to Plaintiff's

investigator by Defendants and determined that this serial number was a replacement serial number that had been issued just a couple days prior and is not allowed to be resold. A person by the name of "Lindsay Duvanski" had contacted Plaintiff's customer service line claiming that their Adobe serial number had been lost. They produced a receipt purporting to be from an Office Depot in Buffalo, New York, showing a purchase of ADOBE CREATIVE SUITE 6 MASTER COLLECTION©. Upon further investigation, Plaintiff has concluded that this receipt is likely fake as the address, telephone number, and store ID for the purported Office Depot are all invalid.

51.     On or about April 22, 2016, Plaintiff sent a cease and desist letter to Defendants via email. Defendant responded via email that same date using the email address "componentsguy@gmail.com" identified as "Ξ ‾_‾ØØÐØØ Ξ." Plaintiff's counsel then engaged with Defendants over the next couple weeks, but Defendants refused to resolve Plaintiff's claims informally.

52.     On information and belief, Defendants registered the domain name integritysystembuilders.com on or about May 28, 2016, shielding their true identity through Domains by Proxy. Thereafter, Defendants began listing Adobe-Branded Software for sale on the website located at integritysystembuilders.com.

53.     On or about May 29, 2016, Defendants changed their eBay seller ID from "voodoo1337" to "voodoo.3dfx."

54.     On or about June 2, 2016, a company by the name of "Integrity System Builders" registered to become an authorized Adobe Partner Connection Program Reseller using a contact name of "Christian Johnson" with an address of 3114 Al Lipscomb Way, Dallas, TX 75215-1713 and an email address of "support@integritysystembuilders.com." Plaintiff is informed and believes that Defendants submitted this registration using the false business information of Integrity System Builders. In registering to become an authorized Adobe Reseller, Defendants agreed to the terms of Plaintiff's APCPRA. Integrity System Builders was assigned an Adobe Reseller Number of AM07323218.

**COMPLAINT FOR DAMAGES**

55.     On or about that same date, June 2, 2016, Defendants' eBay seller ID "voodoo.3dfx" began listing Adobe-Branded Software for sale, identifying itself as an authorized Adobe Reseller AM07323218.

56.     Additionally, on information and belief, in June 2016, Defendants began selling Adobe-Branded Software through a Bonanza seller ID "IntegritySystems." Defendants' listings used the same photograph of Adobe-Branded Software with the "‾ ‾ØØÐØØ" watermark that was used by Defendants' previous "voodoo1337" eBay seller ID. Defendants' listings also identified themselves as an authorized Adobe reseller with number AM07323218.

57.     Shortly thereafter, in June 2016, Plaintiff discovered that Defendants' eBay seller ID "voodoo.3dfx" was using the Adobe Reseller number AM07323218. Plaintiff then further researched the registration information for Integrity System Builders and discovered that a fraudulent address had been used. Plaintiff then terminated Integrity Systems Builders' APCPRA in June 2016 for violation of its terms and conditions.

58.     On or about June 17, 2016, "Christian" from Integrity System Builders, using the email address "support@integritysystembuilders.com," emailed Plaintiff asking why its APCPRA had been terminated. On or about that same date, Plaintiff's counsel responded to "Christian" noting that his registration had been flagged as not matching any public records searches and requesting documentation concerning his business in order to get him reinstated as an authorized Adobe reseller. To date, no one has responded to this email.

59.     Instead, on information and belief, on June 20, 2016, Defendants registered the domain name 3dfxgraphics.com, shielding their information again through Domains by Proxy.

60.     On or about June 21, 2016, a company by the name of "3dfxGraphics" registered to become an authorized Adobe reseller through the Adobe Partner Connection Reseller Program, consenting to Plaintiff's APCPRA. 3dfxGraphics used the information of a confirmed 72-year-old man named George Clement living in Lawrence, Kansas, stating that their business website was located at 3dfxgraphics.com. 3dfxGraphics was assigned an Adobe Reseller Number of AM07368897.

**COMPLAINT FOR DAMAGES**

61.     On or about that same date, June 21, 2016, Defendants began using the Adobe Reseller Number AM07368897 in their advertisements for Adobe-Branded Software being offered for sale by eBay seller ID "voodoo.3dfx."

62.     Shortly thereafter, in or about June 2016, Plaintiff discovered the link between Defendants and 3dfxGraphics and terminated the APCPRA. Plaintiff then issued takedowns of Defendants' eBay listings of Adobe-Branded Software.

63.     On information and belief, Defendants then registered the domain name graphicstechnica.com, using Domains by Proxy, on June 29, 2016.

64.     On July 1, 2016, "Graphics Technica" registered to become an authorized Adobe reseller through the Adobe Partner Connection Reseller Program, consenting to Plaintiff's APCPRA. Graphics Technica used the information of a confirmed 81-year-old woman named Barbara Collins living in Dubuque, Iowa, stating that their business website was located at graphicstechnica.com. Graphics Technica was assigned an Adobe Reseller Number of AM07381017.

65.     On or about that same date, July 1, 2016, Defendants began using the Adobe Reseller Number AM07381017 in their listings for Adobe-Branded Software through their eBay seller ID "voodoo.3dfx."

66.     On or about July 7, 2016, on information and belief, Defendants registered the Bonanza seller ID "voodooGT" using the name Graphics Technica. Defendants begin offering Adobe-Branded Software for sale through their Bonanza ID referencing the Adobe Reseller Number AM07381017. Defendants' listing for "Adobe CS6 Master Collection FULL RETAIL Creative Suite 6 WIN AUTHORIZED RESELLER" was identical or virtually identical to the eBay listing of "voodoo1337," including use of the same product image watermarked with "⎺_⎺ØØÐØØ."

67.     Thereafter, in or about July 2016, Plaintiff discovered the link between Graphics Technica and Defendants and terminated the APCPRA. Plaintiff then issued takedowns of Defendants' eBay and Bonanza listings of Adobe-Branded Software.

68.     In or about August 2016, Plaintiff's investigator observed an additional eBay account – "robyne_26" – that the investigator suspected was connected to Defendants given similarities in price points, photos, listing details and language. Plaintiff issued a takedown notice to eBay to remove the listings for unauthorized Adobe-Branded Software.

69.     On August 22, 2016, Plaintiff received from eBay the counternotice filed by "Robyn Edwards." That same date, Plaintiff sent a cease and desist letter to "Robyn Edwards" via USPS and email.

70.     On August 25, 2016, "Robyn Edwards" responded to Plaintiff's cease and desist letter via email using language substantially similar to that used by Defendants during their April and May 2016 correspondence with Plaintiff's counsel and refusing to cooperate with Adobe's cease and desist demands.

71.     Accordingly, on or about September 8, 2016, Plaintiff's investigator purchased a purported "Adobe CS6 Master Collection Windows Retail Creative Suite inc Photoshop Extended" from eBay seller "robyne_26" for $1,199.00. Payment was made to "Kotton Kandy Enterprises" with an email address of "dmartindale@greenmail.net."

72.     However, on or about September 12, 2016, Defendants refunded Plaintiff's investigator and sent a message to Plaintiff's investigator through eBay noting that they had identified the investigator and reported Plaintiff's "harassment" to eBay.

73.     On or about September 9, 2016, a second investigator hired by Plaintiff purchased from the same eBay seller ID "robyne_26" a purported "Adobe CS6 Master Collection Windows Retail Creative Suite inc Photoshop Extended" for $1,199.00. Payment was made to "Kotton Kandy Enterprises" with an email address of "robyne@iname.com."

74.     On or about September 12, 2016, Plaintiff's investigator received an email from "Robyn Edwards" with an email address of "robyne@iname.com" containing a serial number pursuant to the September 9, 2016, order. This email contained an initial three line paragraph that was word for word verbatim (except for the changing from first-person singular pronouns to first-person plural pronouns) to the initial paragraph of the December 19, 2015, email received from "Ξ ¯ ̄ ØØĐØØ Ξ" a/k/a "Chris," pursuant to the December 4, 2015, purchase from eBay

- 18 -
**COMPLAINT FOR DAMAGES**

seller ID "voodoo1337." The paragraph after the serial number was also virtually identical, including the same capitalization and underlining, except for the insertion of two new words.

75.     On or about September 19, 2016, Plaintiff's investigator received a package with a return address of "3DS, 2220 Meridian Boulevard, Suite #: W2696, Minden NV 89423." The package contained a CD jewel case with clear front and purple back that contained a disc purporting to be "Adobe Creative Suite 6 MASTER-COLLECTION." The disc was clearly homemade and used artwork and trademarks similar to Plaintiff's legitimate products.

76.     Thereafter, Plaintiff inspected the disc and confirmed that the Adobe-Branded Software provided by Defendants pursuant to the September 9, 2016, order contained a copy of ADOBE CREATIVE SUITE 6 MASTER COLLECTION©. Plaintiff also confirmed that the disc was a counterfeit DVD-R disc that had not been manufactured or authorized to be manufactured by Plaintiff. Plaintiff also analyzed the serial number sent to Plaintiff's investigator by Defendants and determined that this serial number was for EDU Adobe-Branded Software intended solely for distribution in a foreign region outside of North America.

77.     Moreover, in October 2016, Plaintiff began observing additional eBay accounts that it suspected to be Defendants. Plaintiff issued takedown notices to some of these accounts, including eBay seller IDs "stormlabs," "firenet," and "xtremespecsystems." Counternotices were filed on behalf of each of the purported registrants of the eBay seller IDs. The registrant information obtained from the eBay counternotices used the same fax number for each of these three seller IDs. Plaintiff followed suit by sending cease and desist letters to those that it could confirm valid addresses.

78.     On October 20, 2016, Plaintiff was contacted by the daughter of the purported registrant of eBay seller ID "stormlabs." The woman stated that her father, the purported registrant of the eBay account, was eighty years old, did not speak any English, and did not have an eBay or email account. The woman noted that her father's name and address were correct, but the telephone and fax numbers associated with the eBay account were not his. The woman claimed that her father's identity must have been stolen by whomever had registered the eBay account.

79.     Finally, in or about April 2017, Plaintiff began observing additional eBay seller IDs advertising Adobe-Branded Software for sale using similar, if not identical advertisements to the original posts by Defendants. Included in the listings posted by seller IDs "yanshopcs6," "ciziko," "shopxii," and "robertcollier69" are identical images to the original listing by Defendants that contain the "¯_¯ØØÐØØ" watermark.

80.     On information and belief, it has become apparent to Plaintiff that Defendants are engaged in an ongoing piratical concern whose primary business consists of systematically infringing upon Plaintiff's Trademarks and Copyrights in order to generate substantial illegal revenues. It is clear to Plaintiff that Defendants will not stop their infringing and illegal conduct until forced to do so by this Court.

81.     By these sales and on information and belief, Defendants have advertised, marketed, offered for sale, sold and distributed numerous counterfeit and/or unauthorized Adobe-Branded Software products to consumers that infringe on Plaintiff's Trademarks and Copyrights, resulting in thousands if not millions of dollars in ill-begotten gains from Defendants' infringement. Defendants' dealings in counterfeit and/or unauthorized software products violate Plaintiff's exclusive rights in Plaintiff's Copyrights and use images and marks that are confusingly similar to, identical to, and/or constitute counterfeit reproductions of Plaintiff's Trademarks to confuse consumers and aid in the promotion and sales of Defendants' unauthorized product.

82.     Defendants' conduct and use began long after Plaintiff's adoption and use of its ADOBE®, ACROBAT®, AFTER EFFECTS®, ADOBE AUDITION®, CREATIVE SUITE®, DREAMWEAVER®, ENCORE®, FIREWORKS®, FLASH®, FLASH BUILDER®, ILLUSTRATOR®, INDESIGN®, PHOTOSHOP®, PRELUDE®, ADOBE PREMIERE®, and SPEEDGRADE® word and design trademarks, after Plaintiff obtained the copyright and trademark registrations alleged above, and after Plaintiff's Trademarks became famous.  Indeed, Defendants had knowledge of Plaintiff's ownership of the Trademarks, and of the fame in such Trademarks, prior to the actions alleged herein and adopted them in bad faith and with intent to cause confusion and dilute Plaintiff's Trademarks.  Defendants also had knowledge of Plaintiff's

ownership of its Copyrights and copied, imported, offered for sale, sold, and/or distributed unauthorized copies of the Copyrights in order to illegally profit from Plaintiff's Copyrights.

83.     Having been put on notice by Plaintiff's numerous cease and desist letters, takedown notices, and correspondence with Defendants, Defendants' actions were committed with full knowledge that their conduct constituted infringement of Plaintiff's Trademarks and Copyrights.

84.     Defendants' actions were committed in bad faith and with the intent to dilute Plaintiff's Trademarks, and to cause confusion, mistake or to deceive the consuming public and the public at large as to the source, sponsorship and/or affiliation of Defendants and/or Defendants' counterfeit and unauthorized goods. By their wrongful conduct, Defendants have traded upon and diminished Plaintiff's goodwill.

85.     In committing these acts, Defendants have, among other things, willfully and in bad faith committed the following, all of which has and will continue to cause irreparable harm to Plaintiff: (i) infringed and diluted Plaintiff's rights in Plaintiff's Trademarks; (ii) infringed Plaintiff's Copyrights; (iii) applied counterfeit marks; (iv) misled the public into believing there is an association or connection between Defendants and Plaintiff and/or the products advertised and sold by Defendants and Plaintiff; (v) used false designations of origin on or in connection with its goods and services; and (vi) perpetrated fraud upon Plaintiff.   Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

## **FIRST CAUSE OF ACTION**

**(Infringement of Registered Trademarks against Defendants CHRIS GORSLINE,**

**LINDSAY DUVANSKI, WXONLINE, and DOES 1-10, Inclusive)**

**[15 U.S.C. §1114/*Lanham Act* §32(a)]**

86.     Plaintiff repeats and re-alleges every allegation set forth in Paragraphs 1-85.

87.     Plaintiff has continuously used Plaintiff's Trademarks in interstate commerce since at least as early as 1993.

**COMPLAINT FOR DAMAGES**

88.     Plaintiff, as the owner of all right, title and interest in and to Plaintiff's Trademarks, has standing to maintain an action for trademark infringement under the Trademark Statute, 15 U.S.C. §1114.

89.     Defendants are, and at the time of their actions complained of herein were, actually aware that Plaintiff is the registered trademark holder of Plaintiff's Trademarks.

90.     Defendants did not and failed to obtain the consent or authorization of Plaintiff as the registered owner of Plaintiff's Trademarks to deal in and commercially distribute, market and sell Adobe-Branded Software products bearing Plaintiff's Trademarks into the stream of commerce.

91.     Defendants intentionally and knowingly used in commerce the reproductions, counterfeits, copies, and/or colorable imitations of Plaintiff's registered marks in connection with the sale, offering for sale, and/or distribution of Defendant's software products by importing, offering, advertising, promoting, retailing, selling, and/or distributing counterfeit and/or unauthorized copies of Adobe-Branded Software bearing Plaintiff's Trademarks.

92.     Defendants reproduced, counterfeited, copied, and colorably imitated Plaintiff's Trademarks and applied such reproductions, counterfeits, copies, or colorable imitations to labels, signs, prints, packages, wrappers, receptacles and/or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution and/or advertising of goods.  Defendants thereupon imported, offered, advertised, promoted, retailed, sold, and/or distributed counterfeit and/or unauthorized Adobe-Branded Software bearing Plaintiff's Trademarks.

93.     Defendants' egregious and intentional use and sale of counterfeit and/or unauthorized items bearing Plaintiff's Trademarks is likely to cause confusion or mistake, or to deceive, mislead, betray, and defraud consumers who believe that items being offered for sale by Defendants are authorized products manufactured and distributed by Plaintiff.

94.     Defendants' acts have been committed with knowledge of Plaintiff's exclusive rights and goodwill in Plaintiff's Trademarks.  Defendants' acts have been committed with

1  knowledge that their conduct infringes Plaintiff's rights in Plaintiff's Trademarks. Defendants

2  have acted willfully, in bad faith, and with the intent to cause confusion, mistake or to deceive.

3       95.    Plaintiff has suffered and will continue to suffer substantial and irreparable injury,

4  loss and damage to its rights in and to Plaintiff's Trademarks and the goodwill associated

5  therewith, for which it has no adequate remedy at law. Thus, Plaintiff requests injunctive relief,

6  including but not limited to preliminary relief.

7       96.    Defendants' continued and knowing use of Plaintiff's Trademarks without

8  Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's federally

9  registered trademarks in violation of Section 32 of the *Lanham Act*, 15 U.S.C. §1114. Based on

10  such conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other

11  remedies provided by sections 1116, 1117, and 1118, including Defendants' profits, treble

12  damages, reasonable attorneys' fees, costs and prejudgment interest.

13  **SECOND CAUSE OF ACTION**

14  **(False Designation of Origin / False or Misleading Advertising / Unfair Competition**

15  **against Defendants CHRIS GORSLINE, LINDSAY DUVANSKI, WXONLINE, and DOES**

16  **1-10, Inclusive)**

17  **[15 U.S.C. §1125(a)/*Lanham Act* §43(a)]**

18       97.    Plaintiff repeats and re-alleges every allegation set forth in Paragraphs 1-96.

19       98.    Plaintiff, as the owner of all common law right, title, and interest in and to

20  Plaintiff's Trademarks, has standing to maintain an action for false designation of origin and

21  unfair competition under the Federal Trademark Statute, *Lanham Act* §43(a) (15 U.S.C. §1125).

22  Plaintiff's Trademarks are inherently distinctive and/or have acquired distinctiveness.

23       99.    Defendants have, without authorization, on or in connection with their goods and

24  services, used in commerce marks that are confusingly similar to Plaintiff's Trademarks and/or

25  have made false designations of origin which are likely to cause confusion, mistake or to deceive

26  as to the affiliation, connection or association of Defendants with Plaintiff and/or as to the origin,

27  sponsorship or approval of Defendants' goods or services or commercial activities.

28

**COMPLAINT FOR DAMAGES**

100.   Defendants' conduct described above violates the *Lanham Act*, and Defendants have unfairly competed with and injured Plaintiff and, unless immediately restrained, will continue to injure Plaintiff, causing damage to Plaintiff in an amount to be determined at trial. Defendants' actions are causing and will continue to cause irreparable injury to Plaintiff's goodwill and reputation associated with the value of Plaintiff's Trademarks.

101.   On information and belief, the conduct of Defendants has been knowing, deliberate, willful, and intended to cause confusion, mistake or deception, all in blatant disregard of Plaintiff's rights.

102.   Defendants knew or, by the exercise of reasonable care, should have known that their adoption and commencement of use in commerce and continuing use of marks that are confusingly similar to and constitute a counterfeit reproduction of Plaintiff's Trademarks would cause confusion, mistake, or deception among purchasers, users and the public.

103.   Defendants' egregious and intentional use and sale of counterfeit and/or unauthorized software bearing Plaintiff's Trademarks unfairly competes with Plaintiff and is likely to cause confusion, mistake or to deceive, mislead, betray, and defraud consumers to believe that Defendants' unauthorized products are genuine, authorized Adobe-Branded Software.

104.   Defendants' continuing and knowing use of Plaintiff's Trademarks constitutes false designation of origin and unfair competition in violation of Section 43(a) of the *Lanham Act*, 15 U.S.C. §1125(a), causing Plaintiff to suffer substantial and irreparable injury for which it has no adequate remedy at law.

105.   Defendants' wrongful conduct has permitted or will permit them to make substantial sales and profits on the strength of Plaintiff's marketing, advertising, sales and consumer recognition.  As a direct and proximate result of Defendants' wrongful conduct, as alleged herein, Plaintiff has been and will be deprived of sales of its products in an amount as yet unknown but to be determined at trial, and has been deprived and will be deprived of the value of its marks as commercial assets in an amount as yet unknown but to be determined at trial.

1  Plaintiff seeks an accounting of Defendants' profits and requests that the Court grant Plaintiff

2  three times that amount in the Court's discretion.

3        106.   Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief,

4  including but not limited to preliminary relief, as well as monetary damages and other remedies

5  as provided by the *Lanham Act*, including Defendants' profits, treble damages, reasonable

6  attorneys' fees, costs and prejudgment interest.

7  **THIRD CAUSE OF ACTION**

8  **(Trademark Dilution against Defendants CHRIS GORSLINE, LINDSAY DUVANSKI,**

9  **WXONLINE, and DOES 1-10, Inclusive)**

10  **[15 U.S.C. §1125(c)]**

11        107.   Plaintiff repeats and re-alleges every allegation set forth in Paragraphs 1-106.

12        108.   Plaintiff's Trademarks are distinctive and famous within the meaning of the

13  *Lanham Act*.

14        109.   Upon information and belief, Defendants' unlawful actions began long after

15  Plaintiff's Trademarks became famous, and Defendants acted knowingly, deliberately and

16  willfully with the intent to trade on Plaintiff's reputation and to dilute or tarnish Plaintiff's

17  Trademarks.  Defendants' conduct is willful, wanton and egregious.

18        110.   Defendants' intentional sale of counterfeit and/or unauthorized software bearing

19  Plaintiff's Trademarks is likely to cause confusion, mistake, or to deceive, mislead, betray, and

20  defraud consumers to believe that Defendants' substandard and/or limited software are

21  authorized, full retail versions of Adobe-Branded Software.  The actions of Defendants

22  complained of herein have diluted and will continue to dilute Plaintiff's Trademarks and are

23  likely to impair the distinctiveness, strength and value of Plaintiff's Trademarks and injure the

24  business reputation of Plaintiff and its marks.

25        111.   Defendants' acts have caused and will continue to cause Plaintiff irreparable

26  harm.  Plaintiff has no adequate remedy at law to compensate it fully for the damages that have

27  been caused and which will continue to be caused by Defendants' unlawful acts, unless they are

28  enjoined by this Court.

112.    As the acts alleged herein constitute a willful violation of section 43(c) of the *Lanham Act*, 15 U.S.C. §1125(c), Plaintiff is entitled to injunctive relief, including but not limited to preliminary relief, as well as monetary damages and other remedies provided by 15 U.S.C. §§1116, 1117, 1118, and 1125(c), including Defendants' profits, treble damages, reasonable attorney's fees, costs and prejudgment interest.

### FOURTH CAUSE OF ACTION

**(Federal Copyright Infringement against Defendants CHRIS GORSLINE, LINDSAY DUVANSKI, WXONLINE, and DOES 1-10, Inclusive)**

**[17 U.S.C. §501(a)]**

113.    Plaintiff repeats and re-alleges every allegation set forth in Paragraphs 1-112.

114.    Plaintiff is the exclusive owner of copyrights in the Adobe-Branded Software along with images and other protectable works related thereto and possesses copyright registrations with the United States Copyright Office relating to the same.

115.    Defendants did not seek and failed to obtain Plaintiff's consent or authorization to import, utilize, manufacture, reproduce, copy, display, prepare derivative works, distribute, sell, transfer, rent, perform, and/or market Plaintiff's copyright-protected materials.

116.    Without permission, Defendants intentionally and knowingly reproduced, counterfeited, copied, displayed, manufactured and/or distributed Plaintiff's protected works by importing, offering, advertising, promoting, retailing and/or selling counterfeit and/or unauthorized Adobe-Branded Software, which are, at a minimum, substantially similar to Plaintiff's Copyrights.

117.    Defendants' acts as alleged herein, constitute infringement of Plaintiff's Copyrights, including Plaintiff's exclusive rights to reproduce, distribute and/or sell such protected material.

118.    Defendants' knowing and intentional copyright infringement as alleged herein has caused and will continue to cause substantial and irreparable harm to Plaintiff and has and will continue to cause damage to Plaintiff.  Plaintiff is therefore entitled to injunctive relief, including

1    but not limited to preliminary relief, as well as damages, Defendants' profits, increased damages,

2    and reasonable attorney's fees and costs.

### FIFTH CAUSE OF ACTION

**(Fraud against Defendants CHRIS GORSLINE, LINDSAY DUVANSKI, WXONLINE,**

**and DOES 1-10, Inclusive)**

119.    Plaintiff repeats and re-alleges every allegation set forth in Paragraphs 1-118.

120.    On November 30, 2015, Defendant Duvanski, in connection with and for the benefit of all Defendants, contacted Plaintiff's customer service to acquire a new serial number for ADOBE CREATIVE SUITE 6 MASTER COLLECTION©.

121.    Upon Plaintiff's request for proof of purchase, Defendant Duvanski produced a copy of a purported sales receipt for an Office Depot located in Buffalo, New York.

122.    Based on Defendants' representations and this receipt, Plaintiff provided Defendants with a replacement serial number for ADOBE CREATIVE SUITE 6 MASTER COLLECTION©.

123.    Defendants then distributed this serial number to Plaintiff's investigator two days later.

124.    Plaintiff is informed and believes, after extensive research, that this receipt is fake. The telephone number, address, and store ID for this Office Depot are all invalid. The school that occupies the entire city block where the receipt identifies the Office Depot as being located has confirmed that there is no Office Depot located there nor has there ever been.

125.    Defendants' representations to Plaintiff and purported receipt concerning their purchase of Adobe-Branded Software were false, and Defendants obviously knew the information to be false when they created the fake document.

126.    Defendants intended for Plaintiff to rely on this false information so that Plaintiff would provide Defendants with a replacement serial number for a product for which Defendants had never purchased.

**COMPLAINT FOR DAMAGES**

127.   Plaintiff, at first believing the information and documentation to be true and accurate, reasonably relied on Defendants' representations and receipt and provided Defendants with a replacement serial number.

128.   Had Plaintiff known that the receipt was fake, Plaintiff would not have provided Defendants with a replacement serial number.

129.   Defendants then profited from the sale of this unauthorized replacement serial number.

130.   Additionally, on or about June 2, 2016, Defendants sought to become an authorized reseller through Plaintiff's Adobe Partner Connection Program. In connection with their application, Defendants represented that their business name was Integrity System Builders with a contact name of Christian Johnson. Defendants provided address information in Dallas, Texas.

131.   Based on Defendants' representations, Plaintiff approved Integrity System Builders to join the Adobe Partner Connection Program. The Parties entered into an APCPRA, and Plaintiff assigned Integrity System Builders an authorized reseller number.

132.   Defendants thereafter began claiming in their eBay and Bonanza listings for Adobe-Branded Software that they were an authorized Adobe reseller and began using Integrity System Builders' authorized reseller number.

133.   Upon learning that Integrity System Builders had used false contact information and was merely a front for Defendants, Plaintiff terminated the APCPRA with Integrity System Builders.

134.   After the APCPRA with Integrity Systems Builders was terminated, on June 21, 2016, Defendants again sought to become an authorized reseller with Plaintiff – this time misappropriating the information of a 72-year-old man in Lawrence, Kansas and going by the business name of 3dfxGraphics in their application.

135.   Based on Defendants' representations, Plaintiff approved 3dfxGraphics to join the Adobe Partner Connection Program. The Parties entered into an APCPRA, and Plaintiff assigned 3dfxGraphics an authorized reseller number.

136.    Defendants thereafter began using 3dfxGraphics' authorized reseller number in their eBay listings for Adobe-Branded Software, claiming to be an authorized Adobe reseller.

137.    Upon learning that 3dfxGraphics was another front for Defendants, likely using stolen information, Plaintiff terminated the APCPRA with 3dfxGraphics.

138.    Defendants then, on July 1, 2016, sought to enter into yet another APCPRA with Plaintiff under the business name of Graphics Technica. Graphics Technica assumed the contact information of an 81-year-old Dubuque, Iowa, woman named Barbara Collins.

139.    Based on Defendants' representations, Plaintiff approved Graphics Technica's entry into the Adobe Partner Connection Program. The Parties entered into another APCPRA, and Plaintiff assigned an authorized reseller number to Graphics Technica.

140.    Thereafter, Defendants began using Graphics Technica's reseller number in Defendants' eBay and Bonanza listings, claiming to be an authorized Adobe reseller.

141.    Upon learning that Graphics Technica was but a third front for Defendants, using presumably stolen information, Plaintiff terminated the APCPRA with Graphics Technica.

142.    Each of these times that Defendants applied to become an authorized reseller of Adobe-Branded Software through the Adobe Partner Connection Program, Defendants provided false or stolen identity and contact information.

143.    Each of these times that Defendants applied to become an authorized reseller of Adobe-Branded Software through the Adobe Partner Connection Program, Defendants swore to the truth and accuracy of the information provided, as memorialized in their APCPRAs.

144.    Defendants' representations to Plaintiff concerning their identity were false, and Defendants obviously knew the information to be false when they entered into the APCPRAs.

145.    Defendants intended for Plaintiff to rely on this false contact information, which was not associated on its face with Defendants, in order for Plaintiff to authorize Defendants' memberships into the Adobe Partner Connection Program.

146.    Plaintiff, at first believing the contact information to be true and accurate, reasonably relied on Defendants' representations and accepted Defendants into the Adobe Partner Connection Program.

**COMPLAINT FOR DAMAGES**

147.   Had Plaintiff known that it was actually Defendants applying to become authorized Adobe resellers, Plaintiff never would have approved or allowed Defendants into the Adobe Partner Connection Program.

148.   Defendants then used their acceptances into the Adobe Partner Connection Program to bolster their advertisements and offers for sale of counterfeit and/or unauthorized Adobe-Branded Software. Specifically, Defendants used their assigned reseller numbers in their eBay and Bonanza listings for Adobe-Branded Software to appeal to customers as an authorized Adobe reseller and provide a false sense of security as to the authenticity of their Adobe-Branded Software.

149.   The Adobe-Branded Software sold and distributed by Defendants using these reseller numbers, however, was counterfeit and/or unauthorized.

150.   Plaintiff has been substantially and irreparably harmed – both financially and in terms of its goodwill – as a result of Defendants' sales of counterfeit and/or unauthorized Adobe-Branded Software. Defendants' misrepresentations to Plaintiff directly and substantially caused this harm to Plaintiff. Without the misrepresentations made to Plaintiff, Defendants would not have been assigned the reseller numbers used to promote their counterfeit and/or unauthorized Adobe-Branded Software and influence customers to buy said software.

151.   Upon information and belief, the conduct of Defendants has been knowing, deliberate, willful, and intended to cause confusion, mistake or to deceive, all in blatant disregard of Plaintiff's rights.

152.   Defendants' wrongful conduct, as alleged above, has permitted them to make substantial sales and profits on the strength of Plaintiff's nationwide marketing, advertising, sales and consumer recognition.  As a direct and proximate result of Defendants' wrongful conduct, as alleged herein, Plaintiff has been and will be deprived of substantial sales of its products in an amount as yet unknown but to be determined at trial, and has been and will be deprived of the value of its copyrights and trademarks as commercial assets, in an amount as yet unknown but to be determined at trial.

153.    Plaintiff seeks restitution in this matter, including an order granting Defendants' profits stemming from their fraudulent activity as well as Plaintiff's actual and/or compensatory damages.

154.    Plaintiff seeks punitive damages for the fraud perpetrated on it by Defendants.

155.    Plaintiff has no adequate remedy at law for Defendants' ongoing fraudulent conduct.  Plaintiff seeks injunctive relief, including but not limited to preliminary relief.

156.    Plaintiff further requests a court order that an asset freeze or constructive trust be imposed over all monies in Defendants' possession that rightfully belong to Plaintiff.

### PRAYER OF RELIEF

WHEREFORE, Plaintiff ADOBE SYSTEMS INCORPORATED prays for judgment against Defendants CHRIS GORSLINE, LINDSAY DUVANSKI, WXONLINE, and DOES 1-10, inclusive, and each of them, as follows:

A.  For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for trademark infringement under 15 U.S.C. §1114(a);

B.  For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for copyright infringement under 17 U.S.C. §501(a);

C.  For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

D.  For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for trademark dilution under 15 U.S.C. §1125(c);

E.  In the alternative to actual damages and Defendants' profits for the infringement and counterfeiting of Plaintiff's Trademarks pursuant to the *Lanham Act*, for statutory damages pursuant to 15 U.S.C. §1117(c), which election Plaintiff will make prior to the rendering of final judgment;

F.  In the alternative to actual damages and Defendants' profits for the infringement of Plaintiff's Copyrights pursuant to 17 U.S.C. §504(b), for statutory damages pursuant

**COMPLAINT FOR DAMAGES**

to 17 U.S.C. §504(c), which election Plaintiff will make prior to the rendering of final judgment;

G. For consequential and compensatory damages;

H. For punitive damages due to Defendants' fraud on Plaintiff;

I. For an injunction by this Court prohibiting Defendants from engaging or continuing to engage in the unlawful, unfair, or fraudulent business acts or practices described herein, including the advertising and/or dealing in any counterfeit and/or unauthorized product; the unauthorized use of any mark, copyright or other intellectual property right of Plaintiff; acts of trademark infringement or dilution; acts of copyright infringement; false designation of origin; unfair competition; and any other act in derogation of Plaintiff's rights;

J. For an order from the Court requiring that Defendants provide complete accountings and for equitable relief, including that Defendants disgorge and return or pay their ill-gotten gains obtained from the illegal transactions entered into and/or pay restitution, including the amount of monies that should have been paid if Defendants complied with their legal obligations, or as equity requires;

K. For an order from the Court that an asset freeze or constructive trust be imposed over all monies and profits in Defendants' possession which rightfully belong to Plaintiff;

L. For destruction of the infringing articles in Defendants' possession under 15 U.S.C. §1118 and 17 U.S.C. §503;

M. For treble damages suffered by Plaintiff as a result of the willful and intentional infringements and acts of counterfeiting engaged in by Defendants, under 15 U.S.C. §1117(b);

N. For damages in an amount to be proven at trial for unjust enrichment;

O. For Plaintiff's reasonable attorney's fees;

P. For all costs of suit; and

Q. For such other and further relief as the Court may deem just and equitable.

**COMPLAINT FOR DAMAGES**

1

## DEMAND FOR JURY TRIAL

2          Plaintiff ADOBE SYSTEMS INCORPORATED respectfully demands a trial by jury in

3    this action.

4

5    DATED: June 27, 2017                          JOHNSON & PHAM, LLP

6
                                                   By: /s/ Christopher Q. Pham
7                                                  Christopher Q. Pham, Esq.
                                                   Nicole Drey Huerter, Esq.
8                                                  Attorneys for Plaintiff
                                                   ADOBE SYSTEMS INCORPORATED
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 33 -
**COMPLAINT FOR DAMAGES**